UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAMONT HENDERSON,

                              Plaintiff,

              -vs-                                    06-CV-0222C(SR)

WHITING DOOR MANUFACTURING CORP.,

                              Defendant.
_____

APPEARANCES:        LAMONT HENDERSON, Plaintiff *Pro Se.*

                    O'CONNELL & McCLAREN, LLP (COLLEEN O'CONNELL
                    JANCEVSKI, ESQ., of Counsel), East Aurora, New York,
                    Attorneys for Defendant.


## INTRODUCTION

        Plaintiff commenced this employment discrimination action on April 5, 2006

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*  Item 1.

Specifically, he alleges that he was subjected to unequal terms and conditions of

employment, a hostile work environment based on his race, and retaliation because of his

complaints.  The court also reads the *pro se* complaint to allege wrongful termination.[1]

Defendant has filed a motion for summary judgment (Item 43) arguing that plaintiff's claims

are time-barred, that he failed to exhaust his administrative remedies, that he has failed

to establish a *prima facie* case of discrimination, and that defendant has presented

_____

        [1]        The court attempted to assist plaintiff in securing the services of an
attorney.   However, plaintiff was unable to agree to terms of the representations and
decided to continue to proceed *pro se.*

legitimate, non-discriminatory reasons for its employment decisions.  For the reasons that follow, defendant's motion is granted, and the complaint is dismissed.

## BACKGROUND AND FACTS

Plaintiff commenced his employment with defendant Whiting Door on August 25, 1997 as a general laborer.  In his complaint, he alleges that the first act of discrimination occurred in 1998 and continued consistently thereafter.  Item 1.  He states that he was harassed on account of his race, was singled out for undesirable jobs, was subjected to racial slurs written on walls, was injured by a co-worker's hot screws, and was screamed at by his supervisor on a daily basis, "including racial slurs on occasion."  *Id*. at 4.  On February 6, 2004, plaintiff filed a charge of discrimination with the Equal Opportunity Employment Commission ("EEOC").  In it, plaintiff  stated that beginning in approximately June 2004, he was subjected to different terms and conditions of employment, including being forced to "hand stack screws" while other employees were doing less demanding jobs, and having to do other workers' jobs such as pulling baskets.   Plaintiff also complained that he was burned with hot screws by a co-worker on October 15, 2003, and was subjected to "antagonizing, abusive and unwelcome comments by the foremen."  *Id*. at 11.  Additionally, plaintiff alleged that he was denied promotions and overtime.  Plaintiff stated that he filed a grievance on July 10, 2003 alleging discrimination, and on August 6, 2003 received an disciplinary warning for failure to follow procedures.  *See* Item 1, Attachments; Item 47, Exh. A.

In a determination dated March 7, 2006, the EEOC found that the evidence did not establish racial discrimination against plaintiff in job assignments, training, overtime, or

promotions. However, the EEOC found evidence of a hostile work environment, in that racial graffiti appeared on the walls of the men's room. While the employer cleaned the walls, no further action was taken against any possible offending employees. Additionally, the EEOC found a substantial under-representation of black employees in the workplace. The EEOC issued plaintiff a Notice of Right to Sue on March 28, 2006. Item 1, Attachments; Item 47, Exh. B.

In support of its motion for summary judgment, defendant has submitted several affidavits which detail plaintiff's work history, including disciplinary actions and grievances. With the assistance of his union, plaintiff submitted a narrative of his grievance filed in July 2003, which included complaints regarding the denial of a forklift position in 2001, unjust discipline in November 2002 for not wearing safety shoes on the production floor, denial of overtime opportunities, denial of promotions, treatment by supervisors, and unfair work assignments. Following an investigation by the employer into each of plaintiff's complaints, defendant found no evidence to corroborate plaintiff's allegations. Item 48, ¶¶ 8-15. The union concurred with the results of the investigation and withdrew the grievance. *Id.,* ¶ 16.

Over the course of his employment with Whiting Door, plaintiff sought three positions. A collective bargaining agreement ("CBA") between defendant and the union sets forth procedures for filling job vacancies. Item 49, ¶ 3. In August 2003, plaintiff submitted his name for consideration for a position, but later withdrew his name. The position was awarded to the only other applicant. *Id.,* ¶ 4. In July 2003, a welder position was awarded, in accordance with the CBA procedures, to the most senior applicant. *Id.,* ¶ 5. In 2001, a position was awarded to another employee with the same seniority date as plaintiff, but with a better work record, in accordance with the CBA. *Id,* ¶ 6.

3

On October 15, 2003, plaintiff complained to his supervisor that another employee purposely dumped fasteners too hard which caused them to bounce off the table and hit him.  In the course of an investigation, a supervisor interviewed the alleged offending employee, Lori Udell.  Udell stated that fasteners often fly off the table due to the fast pace of the production line and that she did not intentionally seek to harm plaintiff.  Item 53, ¶ 5. Udell also denied that she sought to interfere with plaintiff's marriage, as plaintiff had alleged.  *Id.*  In his deposition, plaintiff admitted that he referred to Udell as an "anorexic bitch" and advised her to mind her own business.  Item 47, Exh. C, p. 264.  After an investigation, defendant found no intentional behavior on the part of Udell and advised both employees to put aside personal differences.  Item 59, ¶ 6.

On August 7, 2003, plaintiff and another employee were both issued warnings for failure to follow procedures in overfilling baskets despite repeated instructions on the proper procedures.  The other employee was Caucasian.  Item 59, ¶ 7.  Plaintiff also received warnings for other work rule violations over the course of his employment, including 14 warnings for excessive absenteeism.  Item 48, ¶ 21.

According to the CBA, overtime is to be shared as equally as possible among the employees.  Although plaintiff complained that he was denied overtime opportunities, his foreman stated that plaintiff worked 37 hours of overtime during the period of June 20, 2003 to April 22, 2005.  Item 50, ¶ 13.  Plaintiff had ample opportunities to work overtime, but rarely agreed to do so.  *Id.,* ¶ 12.  In his deposition, plaintiff admitted that he declined overtime opportunities and even left work during an overtime shift.  Item 47, Exh. C., pp. 119, 121.

Plaintiff's foreman and several other laborers stated that their duties in the E-Coat Department of Whiting Door included:  hanging and dumping of baskets, raking screws, hand-stacking screws, and relieving other employees for breaks and lunches.  Item 50, ¶ 4; Item 52, ¶ 4; Item 54, ¶ 4; Item 55, ¶ 4; Item 56, ¶ 4; Item 59, ¶ 4.  Laborer Steve Szilagyi stated that he never saw plaintiff asked to complete any job assignment out of the ordinary.  Item 55, ¶ 5.

Whiting Door management became aware of graffiti in the men's room which included a racial epithet.  The graffiti was cleaned, the walls were painted black in an effort to discourage future vandalism, and a memo was issued to all employees reminding them of the company's anti-discrimination and harassment policies.  Item 49, ¶ 18.

On April 22, 2005, plaintiff was asked by his foreman, Don Deho, to relieve another employee on the production line.  Item 50, ¶ 14.  Plaintiff became verbally abusive and confrontational.  *Id.*  In his deposition, plaintiff admitted that he was "pretty close" to Deho because he was "getting ready to hit him or something."  Item 47, Exh. C, p. 325.  Plaintiff refused to leave the production floor to discuss the matter even after repeated requests from the foreman, a supervisor, the Human Resources Manager, and his union representative.  Item 50, ¶ 15; Item 47, Exh. C, p. 332.  Finally, plaintiff went to a conference room but then refused to comment on the situation.  Plaintiff was terminated for insubordination.  *Id., ¶* 17.

In opposition to the motion, plaintiff limited his response to the facts and circumstances surrounding his termination, and argues that his actions on April 22, 2005 were justified and that he was wrongfully terminated.  Specifically, he states that he "never

refused to do [his] job," but admits that he refused to speak with his supervisors regarding the incident. Item 63.

## DISCUSSION

### 1.  Statute of Limitations

Under Title VII, the statute of limitations for filing a charge of discrimination is 300 days.  42 U.S.C. § 2000e-5(e)(1).  Failure to file a timely charge of discrimination with the EEOC renders a claim time-barred.  *Williams v. Bd. of Educ.*, 972 F. Supp. 248, 249 (S.D.N.Y. 1997).  The time for filing a charge of employment discrimination begins when the discriminatory act occurs.   The Supreme Court has held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act," and so a charge must be filed within the statutory time period after the discrete discriminatory act occurs.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Accordingly, "only incidents that took place within the timely filing period are actionable."  *Id.* at  114.

Here, plaintiff filed his EEOC charge on February 12, 2004.  Only those incidents which occurred in the 300-day period preceding the charge are timely.  Thus, any alleged acts of discrimination that took place prior to April 17, 2003, including plaintiff's allegation that he was not allowed to work as a forklift operator and any disciplinary warnings received prior to the statutory period, such as the violation of the safety shoe requirement in November 2002, are not timely and will not be considered by the court.

**2.  Exhaustion of Administrative Remedies**

Defendant also argues that plaintiff has failed to exhaust his administrative remedies with respect to certain allegations, including racial slurs by management, unwarranted discipline, and termination.  Prior to filing a Title VII action, a plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC or the appropriate State agency.  42 U.S.C. § 2000e-5(e); *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993).

Claims not raised in an EEOC charge may nevertheless be heard in federal court if they are "reasonably related" to the claims originally filed with the agency. *See Butts, supra*.  There are only three situations in which courts have held that claims not expressly set forth in an EEOC charge are reasonably related thereto. *Id.* at 1402.  The first exception arises when the claim was "loosely pleaded" in the EEOC charge and "the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 107 n.10 (2d Cir. 1978)).  The second exception applies to cases in which the plaintiff alleges further retaliatory discrimination resulting from the filing of an EEOC charge. *Id*.  The third exception applies when "a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Id.* at 1402-03.

Neither the second nor third exceptions would apply in this case.  In considering the first exception, the Second Circuit has held that "[a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which

7

can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001) (internal quotation marks omitted), *cert. denied sub nom. Potter v. Fitzgerald,* 536 U.S. 922 (2002).  In this inquiry, "the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'"  *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (quoting *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002)).  The central question is whether the complaint filed with the EEOC gave that agency "adequate notice to investigate discrimination on both bases." *Id.* at 202.

Here, plaintiff's wrongful termination claim was not raised with the EEOC.  His original charge was filed prior to his termination, and he failed to file a charge contesting the termination or amend his original charge.  As the EEOC had no opportunity to address plaintiff's claim of wrongful discharge, the court has no jurisdiction to consider the claim.  Additionally, the only racial slurs reported by plaintiff to the EEOC was the alleged use of the term "nigger" by Lori Udell and the graffiti on a restroom wall.  Plaintiff did not complain of racial slurs by his foreman or other management until such allegations appeared in his complaint.  Plaintiff merely complained to the EEOC of "antagonizing, abusive and unwelcome comments" by his foreman.  However, giving the EEOC charge and the *pro se* complaint a liberal construction, the court will assume that plaintiff has raised a timely claim of a hostile work environment based on race.

## 3.  Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no

8

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-moving party. *Ford,* 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.'" *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1535 (2d Cir.) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)), *cert. denied*, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis and internal quotation marks omitted); *McCarthy v. American Intern. Group, Inc.*, 283 F.3d 121, 124 (2d Cir. 2002).

## 4. Plaintiff's Discrimination Claim

Plaintiff has alleged that he was discriminated against in unfair job assignments and the denial of promotions and overtime. Discrimination claims under Title VII are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). First, the plaintiff must establish a *prima facie* case of discrimination by showing

"(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004).   A plaintiff may establish an inference of discrimination either through direct evidence, such as race-based derogatory comments, or indirect evidence, such as differential treatment of similarly situated employees outside of the protected class.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82 (2d Cir. 2001).

Meeting the burden of establishing a *prima facie* case "creates a presumption that the employer unlawfully discriminated."  *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) (internal quotation marks omitted).   The burden then shifts to the employer, who must articulate a legitimate, non-discriminatory reason for its adverse employment action.  *McDonnell Douglas,* 411 U.S. at 802; *James*, 233 F.3d at 154.   That burden "requires the defendant to produce admissible evidence showing 'reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'"  *Eatman v. United Parcel Serv.*, 194 F. Supp. 2d 256, 263 (S.D.N.Y. 2002) (emphasis omitted) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993)).

Once the employer articulates a non-discriminatory reason, the presumption "drops out of the picture."  *St. Mary's Honor Ctr.*, 509 U.S. at 511.   The plaintiff is then required to show that the proffered reason is a pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804.   When the employer has proffered an explanation and the plaintiff has

attempted to refute it, the Court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"  *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

Here, plaintiff is a member of a protected class, was qualified for promotions and overtime, and has alleged adverse employment action in that he states he was denied such opportunities.  Assuming that he has established a *prima facie* case of discrimination with regard to the promotional and overtime opportunities, defendant has offered legitimate, non-discriminatory reasons for the actions it took.  It is uncontroverted that overtime was assigned in accordance with the provisions of the CBA, that plaintiff was offered overtime opportunities, that plaintiff occasionally worked overtime hours, and that he often declined to take advantage of the opportunity to work overtime.  Likewise, the two promotional opportunities in 2003 were filled in accordance with the CBA, one to a senior employee and another to an employee with a superior work record.  As plaintiff has offered no evidence to suggest that the defendant's proffered reasons were pretext for discrimination, the motion for summary judgment is granted, and the claims are dismissed.

With respect to the plaintiff's claim that he was assigned tasks in a discriminatory way, such job assignments do not constitute adverse employment action for purposes of Title VII.  "An 'adverse employment action' is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (quoting *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  "Examples of materially adverse changes include 'termination of employment, a

11

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" *Terry,* 336 F.3d at 138 (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)).   Thus, for example, an adverse employment action is not established by proof of excessive work, denials of requests for leave with pay and a supervisor's general negative treatment, *Fridia v. Henderson*, 2000 WL 1772779, *7 (S.D.N.Y. November 30, 2000), or by evidence of being yelled at, receiving unfair criticism, or receiving unfavorable schedules or work assignments.  *Katz v. Beth Israel Med.* Ctr., 2001 WL 11064, *14 (S.D.N.Y. January 4, 2001).   Accordingly, plaintiff has failed to state a *prima facie* case of discrimination with regard to work assignments, and that claim is also dismissed.

## 5.  Retaliation Claim

Plaintiff has also alleged that he was retaliated against for the filing of a grievance. On July 10, 2003, plaintiff filed a grievance stating that "equal treatment & rules should be followed by foremans [sic] as well as employees."  Item 48, Exh. B.  To establish a *prima facie* case of retaliation, the plaintiff must demonstrate (1) that he was engaged in a protected activity; (2) that defendant knew of the activity; (3) that defendant took an adverse action against the plaintiff; and (4) that there is a causal connection between the adverse action and the protected activity, *i.e.*, that the defendant had a retaliatory motive. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006); *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).  His initial burden in establishing

these elements, as noted above, is *de minimis*.  *See, e.g.*, *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 467 (2d Cir.), *cert. denied*, 534 U.S. 993 (2001).

Plaintiff's internal grievance is "protected activity" within the meaning of Title VII. *See, e.g., Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir. 1992) (internal complaint to management constitutes "protected activity" under Title VII). Additionally, the filing of the grievance is sufficient to put the employer on notice of the plaintiff's protected activity.  *See Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308, 311 (S.D.N.Y.1998).   Plaintiff has shown a causal connection between the protected activity and the alleged retaliatory action by establishing that the adverse action closely followed the protected activity.  *See, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 224 (2d Cir. 2001) (noting that the "causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action"); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (finding the causal connection requirement to be satisfied simply because the plaintiff was terminated less than two months after the filing of one complaint and ten days after the other).

For purposes of the retaliation claim, the adverse employment action must be one that a reasonable employee would have found materially adverse; *i.e.*, "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Sante Fe Ry. Co.*, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006) (internal quotation marks omitted).  Here, without deciding whether a disciplinary warning like that

given to plaintiff constitutes an adverse employment action, the court will assume, for purposes of the motion, that plaintiff has established a *prima facie* case of retaliation.

As with plaintiff's discrimination claim, the burden shifts to the employer to offer a legitimate, non-discriminatory reason for its action. Here, defendant has offered uncontroverted proof that plaintiff and another employee were both given disciplinary warnings for overloading baskets. The other employee was Caucasian. Plaintiff has offered no evidence to suggest that the warning was issued for discriminatory reasons, and the defendant's motion for summary judgment, dismissing plaintiff's retaliation claim, is granted.

### 6. Hostile Work Environment

Finally, plaintiff has alleged that he was subjected to a hostile work environment. In order to survive summary judgment on a claim of hostile work environment, a plaintiff must produce evidence that his workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). The conduct alleged must be severe and pervasive enough to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." *Id*. at 22; *see Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (noting that hostile environment "test has objective and subjective elements"). Accordingly, "a plaintiff alleging a hostile work environment must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the

14

conditions of [his] working environment." *Alfano,* 294 F.3d at 374 (internal quotation marks omitted).   In determining whether that threshold has been reached, "courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* Where a plaintiff alleges a racially hostile work environment, "it is axiomatic that . . . plaintiff must demonstrate that the conduct occurred because of [his race]." *Id.* (internal quotation marks omitted).

Plaintiff has alleged in his complaint that he was "screamed at by his supervisor" on a daily basis, "including racial slurs on occasion." In his deposition, plaintiff admitted that Deho argued with everyone on the production line, not just plaintiff. Item 47, Exh. C, pp. 81-86.   He also stated in his deposition that the only time Deho used the word "nigger" was the day of plaintiff's termination. *Id.* at 255. Plaintiff admitted that he never alleged in his EEOC charge that any management personnel used racial epithets. *Id.* at 253. Plaintiff also stated that Lori Udell referred to him using a racial epithet, although he did not hear this occur. *Id.* at 252. Finally, plaintiff alleged that racial epithets were written on a men's room wall. The record indicates that following the discovery of the racial graffiti, defendant removed it, painted the walls black so as to discourage further incidents, and circulated a reminder of its anti-discrimination policy.

These isolated incidents, including one in which the offensive epithet was not directly heard by the plaintiff, are insufficient to establish a hostile work environment based on race. "[M]ere utterance of an . . . epithet which engenders offensive feelings in an employee" does not affect the conditions of employment to a sufficiently significant degree to violate Title VII. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). In order for

"comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of . . . enmity.  Isolated incidents or episodic conduct will not support a hostile work environment claim."  *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999) (internal quotation marks and citations omitted). Accordingly, the motion for summary judgment is granted, and plaintiff's hostile work environment claim is dismissed.

## CONCLUSION

The defendant's motion for summary judgment is granted, and the complaint is dismissed.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   March 21    , 2008
p:\opinions\06-222.mar1108